UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RITA JACK                                              PLAINTIFF

VS.                             CIVIL ACTION NO. 3:22-cv-124-TSL-RPM

CITY OF MERIDIAN                                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff Rita Jack, an officer with the City of Meridian
Police Department, has brought the present action against the
City of Meridian asserting claims of gender discrimination under
Title VII of the Civil Rights Act, 42 U.S.C. § 2000e <u>et</u> <u>seq</u>.
(Count VI); race discrimination in violation of 42 U.S.C. § 1981
and Title VII (Counts I and IV); retaliation in violation of
Title VII (Counts III and VIII); and hostile work environment
based on race under § 1981 and Title VII (Counts II and V) and
sex, under Title VII (Count VII).  The City has moved, pursuant
to Federal Rule of Civil Procedure 12(b)(6), to dismiss
plaintiff's hostile work environment claims.  Plaintiff has
responded in opposition to the motion, and the court, having
considered the memoranda of authorities submitted by the
parties, concludes the motion should be granted.

The following are the factual allegations contained in
plaintiff's complaint.  Plaintiff was (and is) employed by the

1

Meridian Police Department.  At the commencement of the events at issue, she held the position of acting captain over the criminal investigation division.  In January 2020, then police chief Benny Dubose, a black male, resigned the position. Plaintiff applied for the position of interim chief, but on April 2, 2020, Meridian Mayor Percy Bland, a black male, selected a less qualified white male, Lewis Robbins, to fill the position, despite an interview board's having voted four-to-one in favor of selecting plaintiff for the position.  After leaving a meeting that date between plaintiff, Mayor Bland and Chief Administrative Officer Eddie Kelley in which the mayor informed plaintiff of his selection of Robbins, Kelley advised plaintiff to "tone it down" and not "talk so direct" to Mayor Bland. Later that month, when Robbins resigned as interim chief, Mayor Bland did not even consider plaintiff for the open position and instead, he filled the position with a less qualified black male, Charles Coleman, who had not applied for the position and had not been approved by the interview board.

On May 26, the City demoted plaintiff from her position as acting captain, replaced her with a less qualified white male, Chris Reed, and reassigned her to the training division.  Around the same time, Jerry Bratu, a white male employee of the

Meridian Police Department, who had previously communicated his dislike of plaintiff to other employees of the police department, stated that he did not want to work with plaintiff. Over plaintiff's objection, his request was granted.

On May 29, plaintiff made an inquiry with the EEOC in which she alleged discrimination based on race and/or sex, and on the same day, she filed a grievance with the Meridian Civil Service Commission complaining of race and sex discrimination.  Two weeks later, on June 12, then-Chief Coleman and City Administrator Kelley offered to promote plaintiff to captain and give her a pay raise in exchange for dropping her grievance. After she rejected the offer, Kelley suggested that she hold off on a decision until after she had spoken with her husband.

On June 25, plaintiff was informed she would be reassigned effective July 3, 2020, to the less desirable Bonita Lakes Mall precinct.  On July 8, 2020, she was placed on administrative leave; on July 17, she was placed on administrative leave with pay pending termination; and on July 31, 2020, she was terminated.  She alleges Her reassignment, leave and termination were all because of her race and/or gender and/or her complaints of discrimination.  Plaintiff appealed her termination, and following a September 1 hearing, the Meridian Civil Service

3

Commission voted unanimously in favor of her reinstatement.  The following day, Mayor Bland held a press conference in which he claimed that plaintiff had confessed to the misconduct that was the ostensible basis for her termination.

Plaintiff alleges that the City allowed a hostile work environment against her on the basis of her race and/or gender and/or in retaliation for complaints of discrimination by twice passing her over for promotions, demoting her, reassigning her and ultimately terminating her employment, and by "failing to take prompt remedial action against Mr. Bratu's race-based [and sex-based] harassment," by "Mayor Bland's denouncing comment about [plaintiff] to the press," and by "Mr. Kelley's sexist comments to [plaintiff] about 'toning it down,' not speaking 'so directly,' and waiting to speak with her husband before making a professional decision."

To state a hostile work environment claim under Title VII and/or § 1981, "the plaintiff must show, among other things, that she was subjected to unwelcome harassment that affected a term, condition, or privilege of employment, and that her employer knew or should have known of the harassment and failed to take prompt remedial action." Montgomery-Smith v. George, 810 Fed. Appx. 252, 259 (5th Cir. 2020).  "[C]onduct must be

4

extreme to amount to a change in the terms and conditions of employment." Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). A hostile work environment exists only

> when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative.

Id. at 258–59 (quotation marks and citations omitted).

The plaintiff in Montgomery-Smith based her hostile work environment claim on allegations that she was repeatedly denied promotions over a period of months; a coworker glared and laughed at her each time she was denied a promotion; she was moved to a different office and isolated from her coworkers, who were instructed not to talk to her; and she was not invited to the Thanksgiving luncheon or asked to participate in the office's "Pink Day." Id. at 259. The Fifth Circuit found that

"[t]hese incidents, even when taken together, do not amount to
the type of 'extreme' conduct required by the Supreme Court to
make out a claim for a hostile work environment."  Id.  The
court held, more particularly, that "[d]enials of promotions,
although considered adverse employment actions sufficient to
support a Title VII claim …, are not offensive or harassing in
the way necessary to support a hostile work environment claim."
Id.  And the remaining allegations related to behavior that was
merely rude and/or isolated incidents that were not severe or
pervasive enough to establish a hostile work environment.  Id.

     Likewise, plaintiff's allegations herein are not sufficient
to state a viable hostile work environment claim.  In accordance
with the Fifth Circuit's holding in Montgomery-Smith, the court
concludes that plaintiff's allegations that she was denied
promotions, demoted and reassigned to less desirable
positions/precincts, while obviously sufficient to state claims
for race and gender discrimination and retaliation, are not the
kind of offensive or harassing conduct required to support a
hostile work environment claim.  Neither are her remaining
allegations sufficient to state a claim.  Plaintiff purports to
believe that her race and/or gender motivated Kelley's directive
(or suggestion) that she "tone it down" and not talk so "direct"

6

to the mayor, and that his suggestion that she speak with her husband before rejecting the offer of a promotion in exchange for dropping her grievance was based on her gender. She also believes that Bratu declined to work with her because of her race and/or sex. She has offered no factual basis for these beliefs. In any event, these allege comments and behavior is manifestly not severe or pervasive enough to state a hostile work environment claim. The same is true of her charge that the mayor falsely stated in a press conference that she had confessed to the policy violation for which she was supposedly terminated.

Accordingly, it is ordered that the City's motion to dismiss plaintiff's hostile work environment claim is granted. It is further ordered that plaintiff's motion for partial summary judgment on the issue of exhaustion of her hostile work environment claim is denied as moot.

SO ORDERED this 17th day of August, 2022.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE